IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY SMITH, | : |
| | : No. 13-cv-02775-CDJ |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| E-BACKGROUNDCHECKS.COM and | : |
| STERLING INFOSYSTEMS, INC. | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT E-BACKGROUNDCHECK.COM'S
MOTION TO SEVER PLAINTIFF'S CLAIMS AND TRANSFER VENUE**

Defendant E-Backgroundchecks.com, Inc. ("BGC") submits the following Memorandum of Law in support of its Motion to Sever Plaintiff's Claims and Transfer Venue to the United States District Court for the Northern District of Georgia under 28 U.S.C. §1404(a).

**I.      INTRODUCTION**

The Court should sever Plaintiff's claim against BGC and transfer this action to Plaintiff's home state: the Northern District of Georgia. Plaintiff's claims against BGC have no alleged connection to this district. Plaintiff, a Georgia resident, applied for a job in Georgia and was allegedly denied employment based on the results of a background report BGC conducted from its offices in Texas and South Carolina. Indeed, the only connection to this district appears to be that Plaintiff's lawyers are located here. That is not enough. For the convenience of the parties and witnesses, BGC respectfully requests that the Court sever Plaintiffs' claims against BGC and transfer this action to the Northern District of Georgia.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff resides in Powder Spring, Georgia.  Compl. ¶ 2.  Powder Springs is located in Cobb County,[1] which is within the Northern District of Georgia.[2]

BGC is a Texas corporation with principal places of business in Dallas, Texas.  *Id.* ¶ 3.  Third-party employers retain BGC to conduct background checks on prospective employees.  Declaration of Craig Kessler ("Kessler Decl.") ¶ 1.[3]  BGC performs most of its work through its offices in Dallas, Texas and another office in Chapin, South Carolina.  *Id.* ¶¶ 3, 4.

### B.     Plaintiff Applies for a Job in Georgia; BGC Conducts Background Check

In or around September 2012, Plaintiff applied for a job with Dart Transit ("Dart") in Georgia.  Compl. ¶ 11.  Dart, in turn, requested that BGC conduct a background check on Mr. Smith.  Kessler Decl. ¶ 12.

On September 12, 2012, BGC completed Mr. Smith's background check.  Kessler Decl. ¶ 12.  As part of its investigation, BGC conducted a search of its proprietary database for all criminal records matching Plaintiff's full name (*i.e.*, Tony Willie Smith) and date of birth.  *Id.* ¶ 13.  The search returned a number of Pennsylvania criminal conviction records matching Plaintiff's name and date of birth.  *Id.* ¶ 14.  *See also* Compl. ¶ 3.

That same day—September 12, 2012—BGC sent a letter to Mr. Smith notifying him that Dart had requested that BGC conduct a background check and that BGC was reporting public records information.  Kessler Decl. ¶ 15 & Exhibit 1 attached thereto.  The letter included, *inter*

---

[1] *See* http://www.cityofpowdersprings.org/index.aspx?NID=208

[2] *See* 28 U.S.C. § 90 – Georgia ("The Northern District comprises four divisions.  …  The Atlanta Division comprises the counties of … Cobb.  …").

[3] A copy of the Kessler Declaration is attached hereto as Exhibit A.

*alia*, a copy of Mr. Smith's background report—which included the charges reported by the Pennsylvania AOC—and instructions on how to dispute the accuracy of the report. *Id.*[4]

On September 17, 2012, Mr. Smith called BGC disputing the accuracy of the information in his report. Kessler Decl. ¶ 16 & Exhibits 2 and 3 attached thereto. Specifically, Mr. Smith asserted that the criminal charges did not belong to him. *Id.* That same day—September 17, 2012—BGC sent an e-mail to Dart advising that that it had received a dispute from Mr. Smith and recommending that Dart refrain from making any hiring decisions until Dart received notice of the resolution. *Id.* ¶ 19 & Exhibit 4 attached thereto. BGC also called Mr. Smith on September 17 to acknowledge receipt of his dispute and to let him know BGC had notified Dart of his dispute. *Id.* ¶ 20. & Exhibit 2 attached thereto.

On September 19, 2012—just two days after Mr. Smith disputed the accuracy of his background report—BGC conducted an investigation and determined Mr. Smith was right: the Pennsylvania AOC records in its database did not belong to him; they belonged to a different Mr. Smith with the same first and last name and the same date of birth. Kessler Decl. ¶¶ 21-22. That same day—September 19, 2012—BGC sent an e-mail to Dart advising that it had updated Mr. Smith's background report based on its investigation. *Id*. ¶ 23 & Exhibit 5 attached thereto. BGC also sent an updated background report to Mr. Smith. *Id.* ¶ 24 & Exhibit 6 attached thereto.[5] Upon information and belief, Dart **hired** Mr. Smith after receiving his updated report.[6]

---

[4] Out of an abundance of caution, BGC has not attached Mr. Smith's background report to this motion.

[5] Out of an abundance of caution, BGC has not attached Mr. Smith's updated background report to this motion.

[6] On June 28, July 8, and July 15, counsel for BGC requested that Plaintiff authorize the release of his employment records. As of this date, Plaintiff has not done so.

BGC has never run another background check on Mr. Smith. *Id*.[7] BGC has never published Mr. Smith's report to any company other than Dart. *Id.*

### C. Plaintiff Applies for Another Job; Sterling Conducts Background Check

Shortly after Mr. Smith applied for a job at Dart, he applied for—and secured—another job at Hazen Transport ("Hazen") as a truck driver. Compl. ¶ 18. Defendant Sterling Infosystems, Inc. ("Sterling") conducted the background check on Mr. Smith on behalf of Hazen. *Id.* ¶ 19. In or around December 2012, Hazen allegedly suspended Mr. Smith's employment based on information that appeared in his background report. *Id.* Plaintiff does not allege—nor could he—that BGC had anything to do with the background check Sterling conducted or Hazen's alleged decision to suspend him based on the results of that report. Sterling is an entirely separate company that competes with BGC. Kessler Decl. ¶ 32.

### III. ARGUMENT

The Court should sever Plaintiff's claims against BGC under Rule 21 and transfer them under 28 U.S.C. § 1404(a) to the Northern District of Georgia as there is no connection between this forum and Plaintiff's claims.

### A. Standard Governing Motions to Transfer Under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if the transfer is "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *see also Connors v. UUU Prods.*, No. Civ.A.03–6420, 2004 WL 834726, at *6 (E.D. Pa. Mar.5, 2004). Moreover, where one of

---

[7] Plaintiff alleges he applied for a job at May Trucking. Compl. ¶ 11. BGC has no record of it conducting a background check on Mr. Smith for May Trucking. Kessler Decl. ¶ 29. In fact, May Trucking is not even a BGC client. *Id.*

multiple defendants requests that a court transfer an action to another district, "the claims against those defendants may be severed [under Rule 21] and transferred." *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999). "Nothing within §1404 prohibits a court from severing claims against some defendants from those against others and transferring the severed claims." *Id. See also* 23 Charles Alan Wright & Arthur M. Miller, *Federal Practice and Procedure* § 3846 (3d ed. 2013) ("[W]hen there are multiple defendants a district court has sufficient discretion to sever and transfer the case as to some defendants, while retaining jurisdiction over the case as to other defendants when the circumstances warrant.") (citing cases)

Federal law governs whether transfer is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877–878 (3d Cir. 1995) (federal law applies because questions of venue are procedural, rather than substantive). Analysis of a request for a § 1404(a) transfer has two components.

*First*, both the original venue and the requested venue must be proper. *Id.* at 879. Venue, in a case based on federal question jurisdiction, is proper only in "(1) a jurisdiction where any defendant resides if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or issues giving rise to the claim occurred ..., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

*Second*, because the purpose of allowing § 1404(a) transfers is "'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense,'" *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)), the Court is required to undertake a balancing test in deciding whether the "interests of justice [would] be

better served by a transfer to a different forum." *Jumara*, 55 F.3d at 879.

The Third Circuit has outlined a non-exhaustive list of pertinent public and private interest factors to be weighed in this balancing test. The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience to the parties and non-party witnesses; and (5) the relative access to sources of proof. *Id.* at 879. The public interests include: (1) the interests of the forum state and its residents in deciding the controversy; (2) the relative levels of congestion of the court dockets; and (3) choice of law considerations. *Id.* at 879-80. Both the private and public interest factors weigh in favor of transferring this case to the District of Georgia.

> **B.     The Private Factors Weigh in Favor of Transfer of Plaintiff's Claims Against BGC to the District of Georgia.**
>
> > **1.     Plaintiff's forum choice is entitled to less deference because it is not Plaintiff's home forum and the operative events did not occur there.**

When a plaintiff does not reside in his or her chosen forum, any deference that may be given to the plaintiff's choice of forum is greatly diminished. *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 2160640, at *3 (E.D. Pa. July 17, 2009) ("A plaintiff's choice of forum is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based.") (*quoting McMillan v. Weeks Marine, Inc.*, No. 02-CV-6741, 2002 WL 32107617, *1 (E.D. Pa. Dec. 2, 2002)). Under such circumstances, the plaintiff "must make 'a strong showing of convenience' in order for his choice to be given deference." *Lehr v. Stryker Corp.*, No. 09-2989, 2010 WL 3069633, *3 (E.D. Pa. Aug. 4, 2010) (*quoting Shirley v. First Comp Ins.*, No. 10-0476, 2010 WL 2079752, *2 (E.D. Pa. May 19,

3485197v1

2010)).[8]

Here, Plaintiff is a Georgia resident who applied for a job in Georgia. Compl. ¶ 3. Plaintiff has not, and cannot, make a "strong showing of convenience" in litigating his claim against BGC in this district. Indeed, BGC's Motion would simply transfer his claims to his home forum—the most convenient forum for him. Moreover, BGC's records and witnesses relating to this action are located in South Carolina and Texas—much closer to Georgia than to Pennsylvania. *See, e.g.*, Kessler Decl. ¶¶ 3, 4, 7, 9, 19, 20, 30. The Court should accord his chosen forum little deference. This factor weighs in favor of transfer.

### 2. The Northern District of Georgia is BGC's Choice of Forum.

Plaintiff's home forum, the Northern District of Georgia, is BGC's choice of forum. This court has held that a defendant's choice of forum "can be given weight so long as it does not shift inconvenience to the other party." *Lehr*, 2010 WL 3069633, at *4. Here, Plaintiff would not be inconvenienced if the Court were to transfer this action for a basic and undeniable reason: he lives in Georgia. *See Shirley*, 2010 WL 2079752, at *3 ("We are unsure of how a transfer to a forum that is closer to Plaintiff's home would be less convenient for Plaintiff"). Moreover, none of the witnesses or documents that BGC has in its possession is located in Pennsylvania. They are in either Texas or South Carolina. Kessler Decl. ¶¶ 3, 4, 7, 9, 19, 20, 30. This factor weighs in favor of transfer.

---

[8] Courts have consistently given a plaintiff's choice of forum little weight where plaintiff does not reside in his or her chosen forum. *See, e.g.*, *McMillan*, 2002 WL 32107617, at *1 (rejecting plaintiff's choice of forum given that he resided outside district); *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000) ("[W]hen the plaintiff does not live or work in this jurisdiction, the significance of this preference is minimized."); *Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996) (holding that because the events giving rise to plaintiffs' suit occurred elsewhere, their choice of forum was not entitled to great weight).

### 3. The Acts that Give Rise to Plaintiff's Claims Arose Outside Pennsylvania

"When the vast majority of acts giving rise to plaintiff's claims take place in another forum, the balance weighs heavily in favor of transfer."  *Lehr*, 2010 WL 3069633, at *4.

Here, the operative events giving rise to Plaintiff's claims occurred outside Pennsylvania.

- Plaintiff, a Georgia resident, applied for a job at Dart—in Georgia.

- Dart requested that BGC, a Texas resident, run a background check on Plaintiff.

- BGC conducted the background check from its offices in Texas and South Carolina.

- After conducting its background check, BGC sent Plaintiff a letter from its South Carolina offices.

- Plaintiff disputed the accuracy of the report by calling BGC's South Carolina offices.

- BGC's South Carolina offices conducted a reinvestigation.

- BGC sent Plaintiff a follow-up letter from its South Carolina offices.

- BGC communicated with Dart about the reinvestigation from its Dallas, Texas offices.

In short, there is simply nothing in this district—no parties, third parties, witnesses, or documents—needed to resolve this dispute.[9]  This factor weighs in favor of transfer.

---

[9] Although the Pennsylvania AOC reported criminal charges relating to Mr. Smith, that report is completely irrelevant:  BGC *concedes* the information reported from the Pennsylvania AOC does not belong to Plaintiff.  Indeed, it updated Mr. Smith's background report within ***two days*** of receiving his dispute.

    **4.**  **Trial in Georgia would be more convenient to the parties and relevant witnesses than trial in Pennsylvania.**

  Transfer to the Northern District of Georgia would minimize the costs of litigation incurred by all parties to this suit. "[F]act witnesses who possess firsthand knowledge of the events giving rise to the lawsuit have traditionally weighed quite heavily in the 'balance of the convenience' analysis." *Coppola*, 250 F.R.D. at 199 (*quoting Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998)).

  Here, most of the material fact witnesses critical to this litigation are either in Georgia or much closer to Georgia than to Pennsylvania. Plaintiff currently resides in Georgia; having the trial there would be most convenient for him. Moreover, Plaintiff applied for a position at Dart in Georgia. Georgia would certainly be more convenient to Dart than would Pennsylvania. And, as stated above, the relevant BGC witnesses and documents are much closer to Georgia than to Pennsylvania. Indeed, it is a mere three hour drive from Atlanta to Chapin, South Carolina. In short, trial in Georgia would be more convenient to the parties and relevant witnesses than trial in Pennsylvania. This factor weighs in favor of transfer.

    **5.**  **Transfer of this action to Georgia will ensure the parties access to sources of proof at trial that do not exist in Pennsylvania.**

  As set forth throughout this brief, the primary sources of proof relevant to this case are in Georgia, Texas, and South Carolina. Because Georgia—Plaintiff's home state—is more than 100 miles outside the Eastern District of Pennsylvania, BGC would be precluded from using the subpoena power of this Court to compel any non-resident, non-party witness from Georgia to attend a trial in Pennsylvania. Fed. R. Civ. P. 45(b)(2). An uneven playing field would be created if Plaintiff is allowed to dictate at trial which non-party witnesses will be heard by live testimony and which will be heard by reading depositions or playing video-taped testimony. "Courts accord more weight to the location where the 'amenability of potential witnesses to

compulsory process' is likely." *Melone v. Boeing Co.*, No. 2:07-cv-1192, 2008 WL 877974, *3 (D.N.J. Mar. 28, 2008) (*quoting Property Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 328 (D.N.J. 1995). Furthermore, even if the witnesses "need not be compelled to testify, … which … [is] most unlikely, the inconvenience imposed upon them by requiring them to travel from their home states" to Pennsylvania weighs in favor of transfer to the Northern District of Georgia. *In re Aredia and Zometa Prods. Liab. Litig.*, No. 03:06-MD-1760, 2008 WL 686213, *3 (M.D. Tenn. Mar. 6, 2008).

    **C.**    **The Public Interests in Justice and Efficiency Favor Transfer to the Northern District of Georgia.**

        **1.**    **Georgia residents have an interest in resolving Plaintiff's claims.**

Georgia residents have a far stronger interest in deciding the resolution of this case than Pennsylvania residents. This case involves a Georgia resident who applied for a job in Georgia. Georgia residents have a compelling interest in ensuring companies—particularly out-of-state companies—follow applicable laws that affect their residents' ability to secure employment. *See In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 1985 (E.D.N.Y. 1994) ("When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale."). Pennsylvania residents, in contrast, have far less incentive in securing redress for a Georgia resident—particularly where neither the plaintiff ***nor*** the defendant resides here. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). This factor weighs in favor of transfer.

3485197v1

      **2.      The Northern District of Georgia's docket is less congested than the Eastern District of Pennsylvania's docket.**

The Northern District of Georgia's docket is considerably less congested than the docket in the Eastern District of Pennsylvania. Indeed, judges in this district have, on average, 35% *more* cases than judges in the Northern District of Georgia.[10] The discrepancy in caseloads weighs in favor of transfer to the less crowded docket of the Northern District of Georgia.

      **3.      Choice of law considerations weigh in favor of transfer to the Northern District of Georgia.**

Plaintiff's claims arise under the FCRA, a federal statute. While BGC recognizes that Plaintiff's claims involve the interpretation of a federal statute, BGC respectfully submits that the Northern District of Georgia and the Eleventh Circuit have a far greater interest in interpreting the application of that statute to one of its residents than a court in the Third Circuit. This is particularly true where, as here, the defendant is neither headquartered nor has its principal place of business here. Accordingly, this factor weighs in favor of transfer.

---

[10] *See* Federal Court Management Statistics, District Courts (2013) at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-december-2012.aspx (showing over a 12 month period ending December 31, 2012, the Northern District of Georgia had an average of 451 pending cases per judge, whereas the Eastern District of Pennsylvania had an average of 692 cases per judge).

3485197v1

## IV. <u>CONCLUSION</u>

For the foregoing reasons, BGC respectfully submits that the Court sever Plaintiff's claims against BGC and transfer this action under 28 U.S.C. §1404(a) to the most convenient forum, the Northern District of Georgia.

Respectfully submitted,

/s/ John G. Papianou
John G. Papianou

MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Tel: (215) 772-1500
Fax: (215) 772-7620

Attorneys for Defendant
E-BACKGROUNDCHECKS.COM

-12-
3485197v1

**CERTIFICATE OF SERVICE**

      I certify that on July 25, 2013, I filed the foregoing Memorandum of Law in Support of Defendant E-Backgroundcheck.com's Motion to Sever Plaintiff's Claims and Transfer Venue using the Court's CM/ECF system, which will send e-mail notification of the filing to Plaintiff's Counsel. These documents are available for viewing and downloading via the CM/ECF system.

      /s/ John G. Papianou